**NAGEL RICE, LLP**
Greg M. Kohn, Esq.
230 Park Avenue
Suite 1000
New York, New York 10169
212-551-1465
*Attorneys for Aurelius Technologies, Inc.*

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIUS TECHNOLOGIES, INC. <br><br> Plaintiff, <br><br> v. <br><br> COLD PLANET TECHNOLOGIES, INC., INVESTIGATIVE CONSULTANTS, INC., and DONALD M. A. BERLIN, <br><br><br> Defendants. | Case No.: _____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff Aurelius Technologies, Inc. ("Aurelius") by and through its attorneys, Nagel Rice, LLP, by way of Complaint against Cold Planet Technologies, Inc. ("Cold Planet") and Investigative Consultants, Inc. ("ICI"), hereby states as follows:

## **INTRODUCTION**

1.     This matter arises from Defendants' breach of an Asset Purchase Agreement entered into between Aurelius and Cold Planet on August 30, 2024, under which Cold Planet was to provide certain "identity-based data" to Aurelius in exchange for $2.8 million.[1]

---

[1] Defendant ICI and Defendant Cold Planet are related entities, with unity of ownership and control. Both entities are owned and controlled by Donald M.A. Berlin. ICI was listed as the

2. Unfortunately, Aurelius soon discovered that Defendants had previously sold the very same data to a previous buyer, and was, in fact, in litigation with that buyer.

3. Defendants breached the agreement by failing to disclose – and actively misrepresenting – that the data had been previously sold and was subject to litigation.

4. The data provided by Defendants not only breached the agreement; it was also valueless due to technological defects. Rather than the clean, standalone dataset Defendants had represented, what Aurelius received was a commingled copy of hard drives and server backups from Berlin's disputed Clearview AI project, with no technological separation between the purportedly unencumbered ICI/Cold Planet data and the very data that was the subject of the arbitration judgment; the files' own names and directory paths (bearing markers such as "Project Mugzee," "cv-pushed-data-wall," and "CLEARVIEW PROJECT") confirm that the two cannot be disentangled without a file-by-file forensic review.

## THE PARTIES

5. Plaintiff Aurelius Technologies, Inc., is a technology company with its principal place of business located at 411 Brazos Street, Suite 209, Austin, Texas 78701.

6. Defendant Cold Planet Technologies, Inc. is incorporated in Virginia and has a principal office address of 2020 Pennsylvania Ave. NW Ste 813, Washington, DC 20006-1811, listing a registered agent as Registered Agents Inc., 8401 Maryland Dr Ste S, Henrico, VA, 23294-4648.

---

Seller in the August 30, 2024 Agreement, but Cold Planet was subsequently substituted as the Seller in November 2024 at the request of Mr. Berlin.

7.     Defendant Investigative Consultants, Inc., is incorporated in Virginia and has a principal office address of 21851 Laurel Wood Ct. Leesburg, Virginia 20175, listing its registered agent as Donald Berlin at that same address.

8.     Defendant Donald M.A. Berlin is an individual who resides in Loudoun County, Virginia.  He is the President and Founder of Cold Planet and of Investigative Consultants, Inc.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that diversity of citizenship exists between Plaintiff and Defendants, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over these Defendants as Defendants have agreed within the contract that is the subject of this Complaint, as follows:  "Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of New York in each case located in the city of New York and county of New York (Manhattan), and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding."

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the parties have agreed to bring all actions arising from the contract in this venue, as set forth in the preceding paragraph.

## FACTUAL BACKGROUND

12.     On August 30, 2024, Aurelius and Investigative Consultants, Inc. (later replaced by related entity Cold Planet) entered into an Asset Purchase Agreement through which Cold Planet

was to sell customized data Aurelius. A true and correct copy of the APA is annexed hereto as EXHBIT A.

13.     Prior to entering into the APA, Defendants, and specifically Defendant Mr. Berlin, assured Aurelius that ICI would be able to deliver high-quality data that was unique, free from encumbrance and that had never been sold before.

14.     Although Defendants conveyed certain data to Aurelius, the set of data provided by Defendants had been sold previously to a third-party, Clearview AI, Inc. ("Clearview").

15.     Unbeknownst to Aurelius, Clearview was engaged in litigation with ICI (and Mr. Berlin) regarding the same biometric data sold to Aurelius, at the time that ICI entered into the APA with Aurelius.

16.     In fact, upon information and belief, in the dispute between Clearview and ICI, ICI participated in an arbitration hearing on August 26 through 28, 2024, a mere two days before entering into the APA with Aurelius on August 30, 2024 to sell the same data that was the subject of the arbitration hearing two days earlier.

17.     The APA contains the following dispute resolution provisions that require all claims to be brought in New York, where the parties have agreed to submit to jurisdiction:

> Section 7.10 Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction).

> Section 7.11 Submission to Jurisdiction. Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of New York in each case located in the city of New York and county of New York (Manhattan), and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

4

18.     The APA contains a series of representations and warranties, including Section 3.07, titled "Legal Proceedings," which warrants that the Seller (ICI / Cold Planet) is not involved in any legal action, and that no event or circumstances exists that may give rise to any legal action:

> There is no claim, action, suit, proceeding or government investigation ("Action") of any nature pending or, to Seller's knowledge, threatened against Seller (a) relating to or affecting the Purchased Assets; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

19.     Similarly, Section 3.05(c) of the APA, titled "Intellectual Property," warrants that, with respect to the data that is being sold under the APA, there are no adverse claims to ownership or any such threatened claims:

> Seller's prior and current use of the Purchase IP has not and does not infringe, violate, dilute or misappropriate the Intellectual Property of any person or entity and there are no claims pending or threatened by any person or entity with respect to the ownership, validity, enforceability, effectiveness or use of the Purchased IP. No person or entity is infringing, misappropriating, diluting or otherwise violating any of the Purchased IP . . .

20.     Finally, Section 3.09 of the APA, titled "Full Disclosure," warrants that all of the statements and disclosures made by Seller are full, true and accurate:

> Section 3.09 Full Disclosure. No representation or warranty by Seller in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Buyer pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

21.     Prior to the execution of the APA on August 30, 2024, ICI was involved in a legal dispute with Clearview AI, Inc. concerning the same data that is the subject of the APA.

22.     The arbitration between Clearview and ICI concerned data relating to a certain "Project Mugzee."

23. The data delivered by ICI to Aurelius under the APA contained a substantial number of records with "Project Mugzee" in the filename, indicating that the data sold to Aurelius was the same data that was the subject of the legal action between Clearview and ICI.

24. ICI and its principal, Donald M. A. Berlin, were aware and had actual knowledge of the legal dispute between Clearview and ICI.

25. ICI and its principal, Donald M. A. Berlin, were also aware and had actual knowledge that the data to be sold under the APA was the same data that was the subject of the Clearview dispute.

26. Neither ICI, nor anyone on ICI's behalf, disclosed the existence of the Clearview legal dispute to Aurelius.

27. Because the data that ICI provided to Aurelius under the APA had already been sold to Clearview, and was the subject of a legal dispute, it was valueless to Aurelius.

28. Aurelius paid ICI / Cold Planet $825,000 under the APA.

## COUNT ONE
## (BREACH OF CONTRACT)

29. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

30. On August 30, 2024, ICI entered into the APA with Aurelius.

31. The APA is valid, binding and enforceable contract.

32. Pursuant to the APA, ICI was to provide "all of Seller's identity-based intelligence data for U.S. persons, consisting of approximately 6.1 billion records (on a non-deduped basis) that were legally obtained from various data vendors, which contain data selectors of U.S. Persons, including without limitation [listing 16 data selectors]." *See,* APA Schedule 1.01 ("Purchased Assets").

33. In exchange for the Purchased Assets, Aurelius was to pay $2,800,000 in six scheduled payments to ICI.

34. Aurelius paid $825,000 to ICI prior to becoming aware of ICI's breach of the APA.

35. Pursuant to Section 1.01 of the APA, the Purchased Assets were to be conveyed by ICI to Aurelius "free and clear of any mortgage, pledge, lien, charge, security, claim or other encumbrance."

36. ICI breached the APA by failing to provide data that was free and clear of any claim or other encumbrance.

37. In addition, ICI breached several representations and warranties of the APA. Specifically, ICI breached Section 3.07 of the APA by falsely representing and warranting that there was "no claim, action, suit, proceeding or government investigation ('Action') of any nature pending or, to Seller's knowledge, threatened against Seller (a) relating to or affecting the Purchased Assets; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action."

38. ICI's foregoing representation and warranty was false in light of the ongoing legal dispute between Clearview and ICI over the same data that was conveyed to Aurelius.

39. ICI also breached Section 3.05(c) of the APA by falsely representing and warranting that "there are no claims pending or threatened by any person or entity with respect to the ownership, validity, enforceability, effectiveness or use of the Purchased IP."

40. ICI's foregoing representation and warranty was false in light of the ongoing legal dispute between Clearview and ICI over the same data that was conveyed to Aurelius.

41.    Section 6.02 of the APA, titled "Indemnification by Seller" provides that ICI will indemnify Aurelius against all losses, including attorneys' fees, arising from any inaccuracy of any representations or warranties, and any breach or non-fulfillment of any obligation by ICI:

> Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:
>
> (a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement or any document to be delivered hereunder;
> (b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement or any document to be delivered; and/or
> (c)    any third-party claims or disputes in respect of the Purchased Assets arising from circumstances in existence or actions that occurred, in each case, prior to the Closing.

42.    Under Section 6.02 of the APA, because of ICI inaccuracies and breaches of its representations and warranties, as well as its breach of obligations, Aurelius is entitled to recover its payments made to ICI, as well as its attorneys fees and other costs and losses.

43.    As a direct and proximate result of ICI's breaches of the APA, Aurelius has suffered, and continues to suffer, substantial damages, including, but not limited to, the $825,000 paid to ICI.

44.    Despite demand, ICI has refused and failed to pay Aurelius for losses sustained due to ICI's breach of the APA.

**COUNT TWO**
**(COMMON LAW FRAUD)**

45.    Plaintiff repeats and realleges allegation above as if fully set forth herein.

46.    Defendants, specifically Defendant Berlin, during the period of February 2024 through August 2024, made representations to Aurelius regarding the specifications and quality of

8

the data to be conveyed to Aurelius, including representations that the data sold would be free from encumbrance and had not been sold to any other party.

47.    Defendants' representations were false, and Defendants knew that these representations were false when made.

48.    Defendants made these representations with reckless disregard for their truth or falsity.

49.    Defendants made these representations with the intention and expectation that Aurelius would rely on them and would enter into the APA based upon that reliance.

50.    Aurelius justifiably relied on Defendants' fraudulent representations and proceeded with execution of the APA based on that reliance.

51.    As a direct and proximate result of Defendants' fraudulent representations, Aurelius has suffered, and continues to suffer, substantial damages.

## COUNT THREE
## (UNJUST ENRICHMENT)

52.    Plaintiff repeats and realleges each allegation above as if fully set forth herein.

53.    Plaintiff asserts this claim for unjust enrichment in the alternative to Plaintiff's breach of contract claim.

54.    Aurelius paid Defendants $825,000, thereby conferring a benefit upon Defendants.

55.    Defendants have benefitted and will continue to benefit from the access to and use of those funds.

56.    Defendants accepted Aurelius's payment of $825,000 in exchange for the performance of contractual obligations under the APA, which were not performed.

57.    Aurelius had a reasonable expectation that, in exchange for the $825,000, Defendants would perform as promised under the APA.

58.     In doing so, Aurelius directly lost and was deprived of $825,000.

59.     Because Defendants were enriched at the expense of Aurelius, it would be unjust and inequitable for Defendants to retain the benefit conferred upon them without having rendered their agreed upon performance.

**WHEREFORE,** Plaintiff Aurelius Technologies, Inc. demands judgement against Defendants, jointly and severally, for:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Indemnification;

(d)     Attorneys' fees and costs of suit;

(e)     All such other relief as the Court deems just and proper.

## JURY DEMAND

A trial by jury is hereby demanded on all issues.

Dated: May 21, 2026                                    **NAGEL RICE LLP**

                                                       By: */s/Greg M. Kohn*
                                                       Greg M. Kohn, Esq.
                                                       **NAGEL RICE LLP**
                                                       230 Park Avenue
                                                       New York, New York 10169
                                                       *Attorneys for Aurelius Technologies, Inc.*